No. 22-3082

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

DESHAWN HAROLD JEWELL,

*Petitioner-Appellant*,

*v.*

WARDEN GARY BOUGHTON,

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Eastern District of Wisconsin,
No. 2:19-cv-00658-PP (Pepper, C.J.)

## REPLY BRIEF FOR PETITIONER-APPELLANT

Carrie Montgomery
Daniel S. Volchok
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000

August 28, 2023

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ii

INTRODUCTION .................................................................................... 1

ARGUMENT ......................................................................................... 2

RESPONDENT OFFERS NO SOUND BASIS TO AFFIRM THE DENIAL
    OF HABEAS RELIEF ........................................................................ 2

    *A.*     *The State's Arguments Regarding The Wisconsin
          Court Of Appeals' Harmless-Error Determination
          Lack Merit* ........................................................................ 2

    *B.*     *The State's Arguments Regarding* Brecht *Are
          Meritless* .......................................................................... 8

    *C.*     *The State's Efforts To Create A* Third
          *Requirement For Habeas Relief Should Be
          Rejected* ........................................................................... 16

CONCLUSION ...................................................................................... 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) .......................................... 1, 8

*Brown v. Davenport*, 142 S.Ct. 1510 (2022) ................................. 2, 8, 9, 17

*Chapman v. California*, 386 U.S. 18 (1967) ....................................................... 1

*Davis v. Ayala*, 576 U.S. 257 (2015) ......................................................... 10

*Fahy v. Connecticut*, 375 U.S. 85 (1963) ..................................................... 7

*O'Neal v. McAninch*, 513 U.S. 432 (1995) ................................. 2, 9, 10, 18

*Rogers v. United States*, 422 U.S. 35 (1975) ................................................ 2

*Rushen v. Spain*, 464 U.S. 114 (1983) ...................................................... 15

*Shannon v. United States*, 512 U.S. 573 (1994) ........................................ 5

*Stovall v. Denno*, 388 U.S. 293 (1967) ....................................................... 13

*United Brotherhood of Carpenters & Joiners of America v. United States*, 330 U.S. 395 (1947) ................................................... 5

*United States v. Natale*, 526 F.2d 1160 (2d Cir. 1975) ............................. 5

## INTRODUCTION

When the trial judge here, in the absence of both appellant DeShawn Harold Jewell and his counsel, answered the deliberating jury's factual question about the prosecution's evidence, he concededly committed constitutional error. And contrary to the State's position, that error was not harmless. As his opening brief showed, Mr. Jewell has met his burden for habeas relief, satisfying the standards outlined in both the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and *Brecht v. Abrahamson*, 507 U.S. 619 (1993). The State's brief offers nothing persuasive in response.

Indeed, the State largely ignores Mr. Jewell's main arguments under AEDPA. The State does not engage with Mr. Jewell's points that it is clearly established federal law that factfinding is solely reserved for the jury and that the Wisconsin Court of Appeals had to—and did not— address the harmless-error question by applying the Supreme Court's decision in *Chapman v. California*, 386 U.S. 18, 24 (1967), rather than a sufficiency-of-the-evidence analysis.

The State instead argues principally (Br. 32) that because of the supposedly "overwhelming evidence," Mr. Jewell has not shown that the

trial judge's constitutional error had a "substantial and injurious impact on the jury's verdict." That is wrong. As detailed in the opening brief (at 20-28), the State's evidence was far from overwhelming. And the State cannot evade that fact by arguing as though the issue here were sufficiency of the evidence. The actual issue is whether the trial judge's conceded constitutional error was harmless. And based on the factors laid out in *Rogers v. United States*, 422 U.S. 35 (1975), there is (at the very least) "grave doubt" about the impact of the trial judge's constitutional error—which means that Mr. Jewell "must win." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Further, the State's novel attempt to impose yet a *third* hurdle on petitioners like Mr. Jewell is meritless. *See Brown v. Davenport*, 142 S.Ct. 1510 (2022). By satisfying both AEDPA and *Brecht*, Mr. Jewell has already shown (as the State claims is required) that law and justice require habeas relief.

## ARGUMENT

### RESPONDENT OFFERS NO SOUND BASIS TO AFFIRM THE DENIAL OF HABEAS RELIEF

#### A. *The State's Arguments Regarding The Wisconsin Court Of Appeals' Harmless-Error Determination Lack Merit*

As explained in Mr. Jewell's opening brief, the jury here asked the trial judge a question regarding two items that the police used while

investigating, items about which officers had testified at trial. The first item was the "photo array," which was a series of eight numbered folders: two of them empty, one containing Mr. Jewell's "headshot" photo and the rest each containing the headshot photos of an individual whose physical attributes were supposed to be similar to Mr. Jewell's. A53-54; A100-103. The other piece of evidence was the "six pack," a one-page document containing six numbered "headshot" photos, one of Mr. Jewell and the rest, again, of individuals with supposedly similar physical characteristics. A55, 60; A155. During its deliberations, the jury asked the trial judge whether the numbering on the six pack and the photo array was the same. Outside the presence of Mr. Jewell and his counsel, the judge answered "no," an answer he later said was "[b]ased upon the testimony" and his "40 years" of experience. A152.

Recognizing that Mr. Jewell had a constitutional and statutory right to be present at all important parts of his criminal proceedings, the State concedes (Br. 13, 15) that giving this *ex parte* answer to the deliberating jury's question regarding some of the evidence constituted constitutional error. The State insists, however (Br. 19-29), that AEDPA

precludes relief because the Wisconsin Court of Appeals' harmless-error ruling was not objectively unreasonable. That is not correct.

To begin, the State largely ignores Mr. Jewell's primary arguments regarding objective unreasonableness. In his opening brief, Mr. Jewell argued (at 17-23) that the Wisconsin Court of Appeals' decision was objectively unreasonable for two reasons: (1) the court failed to consider that the trial judge, in answering the jury's question regarding the numbering of the six pack and the photo array, invaded the jury's province as sole factfinder; and (2) the court erroneously substituted a sufficiency-of-the-evidence analysis for the harmless-error analysis that was required. Either of these points, Mr. Jewell argued, was sufficient to meet his burden under AEDPA.

The State tries to wave away the first point, asserting (Br. 21) that if the judge did invade the province of the jury, he "did so only on an undisputed point." But there is no basis for the State's unstated assumption that a judge may intrude upon the jury's sacrosanct role as factfinder so long as he or she does so only as to unchallenged facts. The State cites no case supporting this proposition, likely because courts have long made clear that factfinding is left to the jury, irrespective of

whether a fact is disputed or undisputed. As courts have recognized, a "plea of not guilty places every issue in doubt, and not even [an] undisputed fact may be removed from the jury's consideration[.]" *United States v. Natale*, 526 F.2d 1160, 1167-1168 (2d Cir. 1975) (citing *United Brotherhood of Carpenters & Joiners of America v. United States*, 330 U.S. 395, 408 (1947)); *see also Shannon v. United States*, 512 U.S. 573, 579 (1994) (making no distinction between disputed and undisputed facts in instructing that "[t]he jury's function is to find the facts … [t]he judge, by contrast, imposes [the] sentence"). The trial judge himself instructed the jurors (correctly) that they "are the sole judges of the facts," (R.9-9 at 51) not just of the disputed facts.

More fundamentally, the State is wrong (Br. 21) that the judge's factual response involved "an undisputed point." That is true only if one credits the testimony of two prosecution witnesses (Officers Emanuelson and Kohler) that the headshot photos were shuffled before being placed in the photo array folders. A59, 128. The State *does* credit these witnesses' supposedly "unchallenged" testimony (Br. 13, 20), but the jury was not required to do so. In fact, that is exactly why the

judge's answer to the jury's question was improper; it required jurors to credit the testimony of prosecution witnesses.

The State then asserts (Br. 22) that Mr. Jewell "did not argue at trial that the officers lied about how they composed the 'six pack' and the array." The record belies that assertion. Throughout trial, defense counsel repeatedly emphasized, on cross and at closing, that the officers, in handling the investigation, did not "follow [] everything exactly on the photo array," A138, and disregarded police department standards as well as the federal government's Model Practices and Procedures for eyewitness identification. A106-109. Thus, whether to credit the officers' testimony about the photo array and six-pack procedure, including the numbering systems, *was* disputed. The State attempts to deflect by stating (Br. 21) that the trial judge said nothing about any "weight and credibility the jury should give to the identification the victim made of Jewell's photo." That ignores the critical point: The judge's response *did* signal to the jury the weight it should (in fact had to) give to the credibility of the officers. Again, that is why the answer constituted an impermissible invasion of the jury's province as sole factfinder.

The State next notes—though without actually arguing waiver—that Mr. Jewell raised the issue only during postconviction and on appeal. Br. 20. But that is precisely because the judge never gave defense counsel or Mr. Jewell the opportunity to object before answering the jury's question in Mr. Jewell's and counsel's absence.

Finally, the State says *nothing* to answer Mr. Jewell's argument (Br. 20-23) that the state appellate court unreasonably applied the harmless-error analysis by conducting a sufficiency-of-the-evidence analysis. As detailed in the opening brief, the state court concluded that the trial judge's constitutional error was "harmless" because "there [was] sufficient evidence to support the verdict." SA54-55. This application of a sufficiency analysis directly conflicts with the Supreme Court's repeated holdings that the *Chapman* harmless-error analysis is *not* about the sufficiency of the evidence but about "whether there is a reasonable possibility that the [error] might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85, 86-87 (1963). The State does not even try to dispute that these holdings constitute clearly established federal law for AEDPA purposes. Given this precedent, it was objectively unreasonable for the Wisconsin Court of Appeals to

apply a sufficiency-of-the-evidence test in lieu of the required harmless-error test. Again, on this the State is silent.

Instead, the State (Br. 23) mischaracterizes Mr. Jewell's position as being that the Wisconsin Court of Appeals unreasonably applied *Rogers*. Mr. Jewell made clear (Br. 24) that *Rogers* bears not on whether AEDPA is satisfied but instead on whether the trial judge's constitutional error was harmless under *Brecht*. The State cannot prevail through mischaracterization. The first question here—as the State agrees (Br. 23)—is whether the court unreasonably applied *Chapman*. For the reasons given above and in Mr. Jewell's opening brief, the answer is yes.

### B.    The State's Arguments Regarding Brecht *Are Meritless*

Because AEDPA is satisfied, the only remaining question is whether the judge's conceded constitutional error had a "substantial and injurious effect or influence" on the jury's verdict. *Davenport*, 142 S.Ct. at 1523-1524 (*citing Brecht*, 507 U.S. at 637). As the opening brief explained, the answer is yes. The State's contrary arguments fail.

To start, the State spills much ink arguing (*e.g.*, Br. 14) that "Jewell bears the burden of affirmatively proving that the error had a

'substantial and injurious' impact on the verdict" and that "[t]he district court erroneously shifted th[is] burden from Jewell to the Respondent-Appellee." That argument fails because the Supreme Court has explained that a case like this:

> does not involve a judge who shifts a "burden" to help control the presentation of evidence at a trial, but rather involves a judge who applies a legal standard (harmlessness) to a record that the presentation of evidence is no longer likely to affect. In such a case, we think it conceptually clearer for the judge to ask directly, "Do I, the judge, think that the error substantially influenced the jury's decision?" than for the judge to try to put the same question in terms of proof burdens (*e.g.,* "Do I believe the party has borne its burden of showing ...?").

*O'Neal*, 513 U.S. at 436-437. Thus, in practice, a habeas petitioner does not have to prove anything, and neither does the state. *See id.* at 436. *Brown v. Davenport* did not change this analysis. 142 S.Ct. 1510.

In any event, Mr. Jewell has satisfied any burden he has on this issue. The State's contrary arguments here (Br. 32) rest partly on the district court's statement that "it is impossible to know" the impact of the trial judge's error. But that statement actually shows that relief is required, because the statement is substantively equivalent to concluding that there is "grave doubt" about the harmlessness of an error—and the Supreme Court squarely held in *O'Neal v. McAninch*

that "[w]hen a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had a 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." 513 U.S. at 436; *accord Davis v. Ayala*, 576 U.S. 257, 267-268 (2015). Mr. Jewell's opening brief explained all of this—including citing *O'Neal*—and the State simply ignores that explanation. In fact, it never even cites *O'Neal*. That, of course, does not make *O'Neal* any less binding.

The State fares no better in discussing the relevant considerations under *Brecht* (i.e., the *Rogers* factors). For example, as to the first factor—the nature of the information conveyed to the jury—the State repeatedly asserts (e.g., Br. 13, 23-24) that the trial judge's "no" response to the jury's question about whether the numbering on the six pack matched that of the photo array was supposedly "correct" and based on the "relevant evidence" presented at trial. But as Mr. Jewell explained (Br. 19-20), that cannot be the standard; if it were, then a trial judge could likewise answer a jury question asking whether a defendant is guilty or not, so long as there was "relevant evidence"

presented at trial to support the judge's answer. That is of course not the law.

The State's response to this commonsense point (Br. 20) is that the numbering on the "six pack" and the photo array was not disputed at trial. As discussed, that is simply wrong; defense counsel raised several issues with the photo array, the officer's handling of the investigation, and the reliability of C.F.'s identification—all of which implicated the validity of the six pack. Again, the State's view is that the answer was "correct" because the testimony of the prosecution's witnesses was credible. But credibility was for the jurors to decide—and the fact that they asked about the numbering (having not reached a guilty verdict despite what the State insists (Br. 28) was the "overwhelming" evidence) suggests by itself that the jury had doubts about the credibility of the prosecution's witnesses. The judge's bolstering of that credibility, through his answer to the question, was inappropriate.

As to the second *Rogers* factor—the speed at which the jury returned a verdict after the communication—the State responds (Br. 24) that "no one can know for sure why any jury's deliberations ended

when they did," and that "this jury would have arrived at the same answer on its own." The first point applies to every case, so it is essentially a plea to disregard the factor entirely. And the second point is utterly non-responsive. Whether or not the jury "would have arrived at the same answer on its own" has absolutely nothing to do with the second *Rogers* factor (again, speed of the decision after the communication). The facts that do bear on this factor are simple: The jury deliberated for nearly two hours without reaching a verdict (belying any claim of "overwhelming" evidence) and then returned a verdict almost immediately after the judge's unconstitutional conduct. Those simple facts strongly support that the error was not harmless.

As to the third *Rogers* factor—overall strength of the state's case—the State unsurprisingly denies (Br. 24-26) that its case had "serious flaws." But that denial is not credible. For example, the State points to C.F.'s identification of Mr. Jewell in the photo array, ignoring the fact that the reliability of that identification is heavily undercut by the fact that the robbery took place when it was dark outside (impairing her ability to see clearly) and that C.F. was under the influence having just had drinks at a bar (further limiting her perception). A12-14. The State

then tries to defend the reliability of C.F.'s in-court identification, stating (Br. 25) that Mr. Jewell "ignores the fact that he changed his appearance between his arrest and trial, yet C.F. still was able to identify him in court." That is, with all respect, hard to take seriously. In-court identifications are well-known to be incredibly suggestive—and hence incredibly unreliable—because there is only one realistic option for the witness to choose. Indeed, the Supreme Court recognized over half a century ago the unreliability of identification procedures in which there is only one option. *See Stovall v. Denno*, 388 U.S. 293, 302 (1967) (noting that the practice of showing suspects singly to persons for purpose of identification has been widely condemned). Requests for a witness to make a second identification are likewise known to be unreliable when they are tainted by the first identification. The State's argument about Mr. Jewell's changing appearance speaks to none of that, and thus does nothing to alter the unreliability of the in-court identification here.

Likewise, the State refers (Br. 5) to certain statements made to C.F. during the photo array procedure, but it has nothing to say about the police's improper conduct during the procedure (*see* Opening Br. 5-

7)—conduct that a jury could easily have seen as reflecting shoddy police work in the case, which is more than enough to create reasonable doubt. Finally, if the DNA evidence were as compelling as the State suggests (Br. 25), the jury would not have deliberated for nearly two hours without reaching a verdict before asking questions regarding the photo array. While the State claims that Mr. Jewell "does not explain why two hours of deliberations means that the jury struggled with its decision or did not find the State's case compelling" (Br. 25), the explanation is obvious: If the evidence were remotely as "overwhelming" as the State insists, conviction would have come far more quickly, and without any of the questions the jury posed. It is the *State* that cannot explain what the jury would have needed to discuss for such a prolonged period if the case were as open and shut as the State pretends.

Further, the State (echoing the Wisconsin Court of Appeals' reasoning) argues as though the issue were sufficiency of the evidence, i.e., could a reasonable jury have convicted despite the myriad flaws in the prosecution's case? Indeed, the State is express about this, arguing (Br. 33) that "[t]he evidence was certainly sufficient to convict Jewell of

these serious crimes[.]" But the question here, again, is harmlessness. Simply pointing to some *other* evidence, without addressing the flaws Mr. Jewell identified, "doesn't cut it" (*id.*). The State therefore makes the same mistake the Wisconsin Court of Appeals made, applying the sufficiency-of-the-evidence test where it is not applicable.

As to the absence of a post-conviction evidentiary hearing (another consideration under *Rogers*), the State argues (Br. 27) that Mr. Jewell "does not explain what [a hearing] would have accomplished." The answer: A post-trial hearing allows the prejudicial effect of the trial judge's *ex parte* communication to be determined. *See Rushen v. Spain*, 464 U.S. 114, 119 (1983).

Finally, the State takes issue (Br. 28) with Mr. Jewell's argument that "the judge's statement both before taking the verdict and postconviction—that he would have answered the jury's question the same way had Jewell and his attorney been present—is not credible because of his 'clear motive to say [that] after the fact'" (quoting Opening Br. 28). The State's only response (Br. 28) is that Mr. "Jewell does not identify what that 'clear motive' is." But again, the motive is blindingly obvious—so much so that the State's argument looks like an

effort to deflect from its lack of any substantive response. The clear motive is that by saying he would have given the same answer regardless, the judge reduced the risk of his constitutional error later being deemed harmful. And again, on that central point (as on so many others), the State simply has nothing to say.

In the end, the State's argument is some combination of (1) the evidence was so overwhelming that the jury could not possibly have acquitted Mr. Jewell and (2) the jury could not reasonably have reached a different answer to their question than the one the trial judge gave them. Br. 13, 20. Neither proposition is remotely sustainable given several related facts, namely that the jury could not reach a verdict after nearly two hours of deliberation, that the jury asked the question in the first place, and that defense counsel had raised several serious questions about the evidence (questions to which the State here has no answer). Applying the *Rogers* factors show that there is at a minimum grave doubt about whether the trial judge's error was harmless.

### C.   *The State's Efforts To Create A* Third *Requirement For Habeas Relief Should Be Rejected*

Perhaps recognizing that both AEDPA and *Brecht* are satisfied here, the State tries to pile a *third* required showing onto habeas

petitioners, claiming (Br. 32-34) that Mr. Jewell must "prove[] that law and justice require this Court to exercise its discretion in favor of granting habeas relief." The State is mistaken.

If both the *Brecht* and AEDPA standards are met, then it *has* been shown that "law and justice require" relief, *Davenport*, 142 S.Ct. at 1524. In arguing otherwise, the State is saying that even if a habeas court concludes that the petitioner's convictions flow from both a state-court ruling that *no* "fairminded jurist" could agree with, *id.* at 1530, *and* a state-court constitutional error that substantially and injuriously affected the verdict, it nonetheless might be wholly consonant with "law and justice" to let that conviction stand. That is wholly indefensible.

As set forth above and in the opening brief, there is at least grave doubt about whether the trial judge's unlawful *ex parte* communication with a deliberating jury about the prosecution's evidence had a substantial and injurious effect or influence on the jury's verdict. After clearing AEDPA, this is enough for the Court to grant habeas relief. But even if this Court needed an additional reason to exercise its discretion in this case, law and justice require, and our Constitution demands, that trials be fair and impartial. Constitutional safeguards exist to

"protect individuals from unconstitutional convictions and help []
guarantee the integrity of the criminal process by assuring that trials
are fundamentally fair." *O'Neal*, 513 U.S. at 442. This is particularly
important in this case concerning a trial judge's *ex parte* communication
with a deliberating jury which, the Supreme Court said, can result in
"an unreliable trial outcome and the consequent conviction of an
innocent person." *Id.*

## CONCLUSION

The dismissal of Mr. Jewell's habeas petition should be reversed.

Dated: August 28, 2023             Respectfully submitted.

                                   /s/ *Carrie Montgomery*
                                   Carrie Montgomery
                                   Daniel S. Volchok
                                   WILMER CUTLER PICKERING
                                      HALE AND DORR LLP
                                   2100 Pennsylvania Avenue N.W.
                                   Washington, D.C. 20037
                                   (202) 663-6000

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type-face style requirements of Fed. R. App. P. 32(a)(6), and the type-volume limitation in Fed. R. App. P. 32(a)(7)(B). Specifically, this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook, and according to the word-count function of Microsoft Word, the brief contains 3584 words.

Dated this 28th day of August 2023.

*/s/ Carrie Montgomery*
Carrie Montgomery

## CERTIFICATE OF SERVICE

On this 28th day of August, 2023, I filed the foregoing using the

CM/ECF system, which effected service on all registered counsel.


_/s/ Carrie Montgomery_____
Carrie Montgomery